

230 Park Avenue
New York, NY 10169
otterbourg.com
212 661 9100

**Richard G. Haddad**
Member of the Firm
rhaddad@otterbourg.com
212 905 3622

June 16, 2017

**BY HAND AND ECF**

Honorable Robert W. Sweet
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 18C
New York, New York 10007

> Re:   Ronnie Van Zant, Inc. et al. v. Artimus Pyle (a/k/a Thomas D. Pyle) et al.
>        (17 Civ. 3360 (RWS))

Dear Judge Sweet:

We are counsel to Plaintiffs.  We write in response to the letter motion to compel (the "Motion") filed by Defendant Cleopatra Records, Inc. ("Cleopatra").

Despite Plaintiffs' efforts to meet and confer with Cleopatra concerning outstanding discovery issues and Plaintiffs' written advice, just hours before Cleopatra filed the Motion, that Plaintiffs expected to produce (and now in fact have produced) additional documents, Cleopatra nevertheless filed its Motion late Sunday night.  The Motion is nothing more than an effort to deflect attention from (a) Cleopatra's own discovery deficiencies, and (b) the damaging deposition testimony that Plaintiffs elicited from two Cleopatra witnesses late last week supporting Plaintiffs' view that Defendants Cleopatra and Pyle are working in concert to deprive Plaintiffs of their rights under Your Honor's 1988 Order.  As set forth below, it is Cleopatra and Cleopatra-affiliated individuals, and not Plaintiffs, that are in default of their discovery obligations.  In any event, Plaintiffs have produced additional documents responsive to Cleopatra's requests since the filing of the Motion (and, despite having to obtain decades-old information from archived files, did so well within the deadline for discovery and days before any depositions of the Plaintiffs), precisely as Plaintiffs told Cleopatra they would.

**I.      Cleopatra's Discovery Deficiencies**

In this action, Plaintiffs allege that Cleopatra acted in concert and participation with Defendant Artimus Pyle (a/k/a Thomas D. Pyle) ("Pyle") to violate the restrictions set forth in the Consent Order, Judgment, and Decree entered by this Court on October 11, 1988 (88 Civ. 3192 (RWS)).  Notwithstanding the fact that Pyle's involvement with Cleopatra to develop, film, promote, and/or distribute the motion picture in issue (the "Motion Picture") is thus a key issue –



June 16, 2017
Honorable Robert W. Sweet
Page 2

if not *the* key issue – underlying this action, it took Cleopatra two and a half weeks after being served with Plaintiffs' document requests to produce, on the eve of the first deposition in this action, a 2-page agreement between Cleopatra and Pyle dated June 7, 2016 and a one-page agreement purportedly rendering that agreement "void *ab initio* and of no effect" dated *May 9, 2017 – after* Plaintiffs commenced this litigation and only ten days before Plaintiffs' document requests were served.  Cleopatra has offered no explanation for the delay in producing these critical, contemporaneous documents, and indeed, there can be no reasonable explanation.

Moreover, deposition testimony establishes that responsive communications exist within Cleopatra's possession that were not produced, including emails and texts.  In fact, Cleopatra's minimal production contains only a single email, despite Plaintiffs' specific demand for such communications in its document requests to Cleopatra and in subpoenas to individuals Cleopatra asserts are within the scope of its attorney-client privilege.  In response to Plaintiffs' demand for communications concerning the Motion Picture, Cleopatra unduly limited Plaintiffs' request by stating that it will only "produce communications between Cleopatra and Pyle." *See* Exhibit A hereto, at 12-13 (Request Nos. 25-27).  Setting aside Cleopatra's improper limitation of these requests, deposition testimony establishes that even communications with Pyle that Cleopatra agreed to provide have not been produced, including at least one critical text message that led to a payment from Cleopatra to Pyle in May 2017 after the commencement of this action.  Further, the limitation that Cleopatra has unilaterally grafted upon Plaintiffs' requests is without merit. Plaintiffs are entitled to communications concerning the Motion Picture between not only Cleopatra and Pyle, but also communications involving Cleopatra personnel and agents and any third parties, including any public relations representatives that assisted with promoting the Motion Picture (which deposition testimony confirms exist).

In addition, even though Plaintiffs' have requested multiple categories of documents regarding the Motion Picture, including, without limitation, footage, the film treatment,[1] and draft scripts of the Motion Picture, Cleopatra has only produced one draft of the script, and that may not even be the draft script read by Cleopatra's managing member.  While Cleopatra chides the Plaintiffs for producing "a handful of documents that totaled approximately 140 pages" in its

---

[1] The Free Dictionary defines "treatment" as, as relevant:  "A written sketch outlining the plot, characters, and action for a screenplay but not including certain elements of a finished screenplay, such as camera directions and dialogue. *See* http://www.thefreedictionary.com/treatment.  Wikipedia defines a "film treatment (or simply treatment)" as, in relevant part: "a piece of prose, typically the step between scene cards (index cards and the first draft of a screenplay for a motion picture, television program, or radio play." *See* https://en.wikipedia.org/wiki/Film_treatment.



June 16, 2017
Honorable Robert W. Sweet
Page 3

initial production (which has since been supplemented by several hundred pages), the script accounts for 109 pages of Cleopatra's entire 161-page document production.

Other documents concerning the Motion Picture have not been produced at all. For instance, despite Plaintiffs' demand for documents concerning the alleged extensive research done with respect to the Motion Picture – which Cleopatra relies upon in an attempt to distance itself from its working in concert and participation with Pyle – no such documents have been forthcoming, either from Cleopatra or from Jared Cohn, the director of the Motion Picture who allegedly conducted such research and who has not produced any documents at all in response to Plaintiffs' subpoena despite failing to serve any objections thereto. Cleopatra should be required to produce documents responsive to these requests, subject, of course, to the confidentiality order entered in this case [Dkt. No. 9].

Likewise, Cleopatra's production contains no documents concerning the efforts made to "address [Plaintiffs'] concerns" regarding the Motion Picture following Cleopatra's receipt last year of the Cease and Desist Letter, as averred in a declaration submitted by Cleopatra's managing member. Further, notwithstanding deposition testimony that confirms that Cleopatra worked with a public relations firm to send out at least one press release concerning the Motion Picture – another key issue given Pyle's public statements about the Motion Picture which directly contradict Cleopatra's litigation position – and Cleopatra's response that it "will produce documents concerning each of the three articles attached to the Motion dating prior to the publication of each article within their possession, custody, or control" (Ex. A, at 14 (Request No. 28)), Cleopatra's production contains no such documents.

In sum, if any party should be compelled to produce documents, it should be Cleopatra, and individuals affiliated with Cleopatra, specifically Cohn and Pyle, who have not produced a single page of documents. Plaintiffs request that Cleopatra be directed to produce, at minimum:

- communications concerning the Motion Picture between Cleopatra or its counsel and Pyle (Request Nos. 25 and 27);

- text messages concerning the alleged contractual amendment and payment to Pyle in May 2017 after the commencement of this action (Request No. 25);

- communications concerning the Motion Picture between Cleopatra or its counsel and any third party, including any public relations representatives (Request No. 25);

- the film treatment for the Motion Picture, including any drafts (Request No. 2);



June 16, 2017
Honorable Robert W. Sweet
Page 4

- the footage filmed for the Motion Picture (Request No. 1);

- all drafts of the script for the Motion Picture (Request No. 3);

- documents concerning the research done with respect to the Motion Picture (Request Nos. 14 and 15); and

- documents concerning any publicity for the Motion Picture generated or caused to be generated by Cleopatra (Request No. 28).

## II.      The Plaintiffs Have Already Produced the Documents That Cleopatra Seeks

In apparent recognition of the palpable overbreadth of its document requests – indeed, all but one of Cleopatra's twenty-seven enumerated document requests demand the production of "all" documents concerning various categories of subject matter dating back nearly thirty years, and the other one goes even further, demanding nearly fifty (50) years-worth of "documents concerning criminal conduct, including but not limited to drug use, by current and/or former members of Lynyrd Skynyrd" – Cleopatra belatedly circumscribes certain of its requests and seeks to compel Plaintiffs to produce documents that it alleges are outstanding.  In point of fact, Plaintiffs have already produced substantially all of the documents that Cleopatra now seeks on its Motion, both before the Motion was filed and after.

### 1.      Documents concerning Plaintiffs' compliance with the Consent Order

In its Motion, Cleopatra contends that it is entitled to documents sufficient to show whether Plaintiffs have complied with the Consent Order and documents concerning any actual or alleged violations of the Consent Order.  Plaintiffs dispute Cleopatra's assertions of any alleged violation of the Consent Order, and will not respond to them in the context of this discovery dispute other than to say that they are categorically denied.  However, there can be no question that Plaintiffs have produced documents in response to such requests.

In particular, even before the Motion was filed, Plaintiffs had already produced documents that bear on, and, in fact, contradict, Cleopatra's contention that Plaintiffs did not comply with the Consent Order.  Moreover, Plaintiffs had also produced documents concerning their enforcement of the injunctive terms of the Consent Order in issue in this action in the past, including a prior notice to third parties working in concert and participation with Pyle concerning the unauthorized use of the "Lynyrd Skynyrd" name in 2012.  Plaintiffs have supplemented their initial production with additional documents responsive to such requests, and these documents only further undermine Cleopatra's efforts to divest the Plaintiffs of the rights that they



June 16, 2017
Honorable Robert W. Sweet
Page 5

bargained for under the Consent Order.  In short, Plaintiffs have produced documents responsive to these requests.

There is no claim pleaded by Cleopatra concerning any of the financial terms of the Consent Order (which remain under seal), and thus any breach of any such terms would not be germane (indeed, this action concerns the injunction provisions of the Consent Order, in response to which Cleopatra has invoked the First Amendment and fair use doctrine). Nonetheless, documents produced by Plaintiffs in response to other requests concerning Plaintiffs' compliance with, and any modification of, the Consent Order contain financial information that Cleopatra seeks.  Cleopatra is not entitled, based solely on the unsupported speculation that certain unspecified financial provisions of the Consent Order may or may not have been followed, to undertake a fishing expedition into nearly thirty years-worth (now purportedly trimmed down to "only" ten years-worth) of Plaintiffs' finances. This case is about a movie in 2017, not royalty distributions over the past 30 years.

In fact, Plaintiffs have produced documents showing that Pyle has received ongoing payments without dispute, for decades.  Nothing more should be necessary. *See Perry v. The Margolin & Weinreb Law Group LLP*, 2015 WL 4094352, *3 (E.D.N.Y. Jul. 7, 2015) (denying discovery of plaintiff's financial records because "Defendants' theory is simply too speculative to support the broad nature of the discovery they seek") (internal quotations and citations omitted).

## 2.    Documents concerning Plaintiffs' movie

Cleopatra also faults Plaintiffs for allegedly not producing sufficient documents concerning the film that Plaintiffs are developing and inaccurately characterizes Plaintiffs' irreparable harm argument as being "premised upon" such a film.  Cleopatra's arguments fail for multiple reasons.

First, as already made clear in the Plaintiffs' Complaint (¶¶ 51, 69, 78), as well as in the papers they filed in support of their application for a temporary restraining order and preliminary injunction, the irreparable injury that Plaintiffs will suffer if Cleopatra and Pyle are not enjoined from producing, distributing and/or displaying the Motion Picture or any other motion picture that violates the Consent Order is not at all "premised upon" the development of their own film. Rather, the very fact that the Motion Picture as written, produced, and/or promoted by Pyle and those acting in concert and participation with him violates the express terms of the Consent Order is the type of irreparable harm which injunctions are intended to prevent. *See* Reply Memorandum of Law in Further Support of Motion for Temporary Restraining Order and Preliminary Injunction (the "Reply"), at 8; *see also Grondin v. Rossington*, 690 F. Supp. 200,



June 16, 2017
Honorable Robert W. Sweet
Page 6

204 (S.D.N.Y. 1988) (finding that "if in this case confusion or a valid contract can be shown, irreparable injury follows").

Second, as also is set forth in the Plaintiffs' Reply, the Consent Order does not provide, as Cleopatra implies, that the Plaintiffs had to exercise their rights to make a film and, indeed, does not require that Plaintiffs make or have plans to make a film at all in order to enforce the injunction contained in the Consent Order. (Reply, at 9.)

In view of the foregoing, Plaintiffs have produced documents sufficient to show that development of a motion picture by Plaintiffs was underway prior to the institution of suit, namely, the treatment for Plaintiffs' anticipated film. Cleopatra is entitled to no more. While Cleopatra complains about the substance of the treatment produced, such complaint does not support its position on its Motion that responsive documents were allegedly not produced.

### 3.      Documents responsive to other of Cleopatra's requests

Cleopatra's contention that Plaintiffs' have improperly withheld documents responsive to the other requests set forth in Part IV of its Motion is likewise without merit. Plaintiffs have already produced documents responsive to *each and every* request identified in the last paragraph Cleopatra's Motion. Accordingly, Cleopatra's complaints in its Motion regarding these requests are unfounded, and should be rejected.

By reason of the foregoing, Plaintiffs request that the Motion be denied, and the Court grant such other relief as may be just and proper, including an Order directing Defendants to immediately produce the responsive documents that they are withholding.

Thank you for your consideration.

Respectfully submitted,

*/s/ Richard G. Haddad*

Richard G. Haddad

cc:      Evan Mandel, Esq. (by email)

4799797.1