UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x
RONNIE VAN ZANT, INC., GARY R. ROSSINGTON, :
JOHNNY VAN ZANT, BARBARA HOUSTON, as the :
Trustee of the ALLEN COLLINS TRUST, and ALICIA :
RAPP and CORINNA GAINES BIEMILLER, as the :
Personal Representatives of the Estate of STEVEN : ___ Civ. ___
GAINES, :
 :
                       Plaintiffs, :
 :
     - against - :
 :
ARTIMUS PYLE (a/k/a THOMAS D. PYLE), :
CLEOPATRA RECORDS, INC., CLEOPATRA FILMS, a :
division of CLEOPATRA RECORDS, INC., JOHN DOE, :
JANE DOE, XYZ CORPORATION, and XYZ LLC (the :
names of the last four defendants being fictitious and :
unknown to plaintiffs, and intended to designate persons or :
entities that have or may have a role in the production and :
distribution of the Motion Picture complained of in the :
Complaint herein), :
 :
                       Defendants. :
-------------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

OTTERBOURG P.C.
230 Park Avenue
New York, New York 10169
Telephone: (212) 661-9100
Facsimile: (212) 682-6104

*Attorneys for Plaintiffs*

4765088.1

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii
PRELIMINARY STATEMENT .............................................................................................. 1
FACTUAL BACKGROUND .................................................................................................... 3
ARGUMENT .............................................................................................................................. 4
    PLAINTIFFS ARE ENTITLED TO ENFORCEMENT OF THE EXISTING
    INJUNCTIONS SET FORTH IN THE CONSENT ORDER ........................................... 4
        A.    The Plaintiffs Are Likely to Succeed On The Merits ............................................... 6
        B.    The Plaintiffs Will Suffer Irreparable Injury Absent An Injunction
            and Other Remedies Are Inadequate ........................................................................ 8
        C.    The Balance of the Equities Tips Decidedly in Favor of the Plaintiffs ................... 9
        D.    The Public Interest Is Served By the Issuance of an Injunction ............................ 10
        E.    Not Only Pyle, But Also Cleopatra, Should Be Enjoined ..................................... 11
CONCLUSION ........................................................................................................................ 12

## TABLE OF AUTHORITIES

Page

**Cases**

*Berger v. Heckler,*
  771 F.2d 1556 (2d Cir. 1985) ................................................................................. 7, 9

*Grondin v. Rossington,*
  690 F. Supp. 200 (S.D.N.Y. 1988) ......................................................................... 4, 9

*Hurley v. Coughlin III,*
  158 F.R.D. 22 (S.D.N.Y. 1993) ................................................................................ 4

*In re Methyl Tertiary Butyl Ether Prods. Liability Litig.,*
  399 F. Supp. 2d 325 (S.D.N.Y. 2005) ..................................................................... 11

*Kelly v. Evolution Markets, Inc.,*
  626 F. Supp. 2d 364 (S.D.N.Y. 2009) ...................................................................... 6

*Payroll Express Corp. v. Aetna Cas. & Surety Co.,*
  659 F.2d 285 (2d Cir. 1981) ...................................................................................... 9

*PRL USA Holdings, Inc. v. United States Polo Ass'n, Inc.,*
  No. 14-CV-764 RJS, 2015 WL 1442487 (S.D.N.Y. Mar. 27, 2015) ........................ 6

*Rex Med. L.P. v. Angiotech Pharm. (US), Inc.,*
  745 F. Supp. 2d 616 (S.D.N.Y. 2010) ...................................................................... 8

*Salinger v. Colting,*
  607 F.3d 68 (2d Cir. 2010) ........................................................................................ 6

*Starmedia Network, Inc. v. Star Media Inc.,*
  2001 WL 417118 (S.D.N.Y. Apr. 23, 2001) ....................................................... 11-12

**Statutes and Rules**

Fed. R. Civ. P. 65 .............................................................................................................. 1

Plaintiffs, by and through their undersigned counsel, Otterbourg P.C., respectfully submit this Memorandum of Law in Support of their Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion") pursuant to Rule 65 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

In an article published last week, Defendant Artimus Pyle (a/k/a Thomas D. Pyle) ("Pyle"), a one-time member of the iconic 1970's band Lynyrd Skynyrd, disclosed conduct that, if consummated, would constitute a violation of the express and unambiguous terms of a Consent Order, Judgment and Decree entered by this Court on October 11, 1988 (88 Civ. 3192 RWS) (the "Consent Order"). The Consent Order enjoins Pyle, and those acting in concert and participation with him (such as the other named Defendants, Cleopatra Records Inc. and Cleopatra Films, collectively, "Cleopatra"), from using the name and history of the legendary rock band Lynyrd Skynyrd (at ¶¶ 1(ii) and 3-4, 24) and the name, likeness, portrait, picture, performances or biographical material of certain of Lynyrd Skynyrd's deceased founding members, Ronald Van Zant and Steven Gaines (at ¶¶ 1(iii) and 5), except as specifically set forth therein. However, the Defendants are about to do just that.

Specifically, on April 26, 2017, Plaintiffs learned through the press that the Defendants are about to start filming a motion picture – billed as a "Lynyrd Skynyrd 1977 Plane Crash Biopic" – entitled "Street Survivors: The True Story of the Lynyrd Skynyrd Plane Crash" (the "Motion Picture") and they are publicizing it to be exactly the type of film which the Consent Order prohibits. According to published reports, the Motion Picture is based on a screenplay co-written by Pyle which he says tells a "story about the music and the band and a rise and fall that happened so suddenly." Pyle stated in an interview that he wants "the movie to portray my band

1

members the way there were." Such a movie would clearly violate the Consent Order. Moreover, as an implicit acknowledgement of his violation of the express terms of the Consent Order and the role of Cleopatra in helping him to violate it, Pyle has declared that he was "grateful that Cleopatra is stepping up the way it has, when nobody else was willing to go against the powers that be, to get this story told." Indeed, Cleopatra was well aware of the restrictions of the Consent Order before embarking on this project, having requested a copy of it in July 2016.

While the Consent Order permits Pyle to tell his own personal life story, it prohibits him from using the name or history of Lynyrd Skynyrd or the name, likeness, portrait, picture, performances or biographical material of Ronald Van Zant or of Steven Gaines except as specifically set forth therein (which conditions have not been met here). Further, while Cleopatra is free to make a movie concerning Lynyrd Skynyrd subject to acquiring any necessary rights, it may not make a movie co-written by Pyle that violates the Consent Order nor continue its efforts to bring such movie to fruition despite its knowledge of the violations.

If the Motion Picture is released, it will cause irreparable injury to Plaintiffs which would be impossible to measure. Among other things, such a film would harm the Lynyrd Skynyrd name, brand, and reputation, confuse the public, dilute the marketplace for films about Lynyrd Skynyrd's history made consistent with the terms of the Consent Order, including an authorized film that Plaintiffs are actively pursuing, and defeat the Plaintiffs' right to use productively and lawfully the name and history of Lynyrd Skynyrd and the name, likeness, portrait, picture, performances or biographical material of Ronald Van Zant or of Steven Gaines, each of which would constitute irreparable harm. Moreover, given Pyle's status as a registered sex offender following his felony conviction for sexual abuse of young children, any project created and promoted by Pyle without authorization which uses the name "Lynyrd Skynyrd" and purports to

tell the history of Lynyrd Skynyrd, in whole or in part, including the Motion Picture, would only further exacerbate the risk of irreparable harm to the Lynyrd Skynyrd name, brand, and reputation. Given the clear violation of the Consent Order by the Defendants, the Plaintiffs are likely to succeed on the merits, and are therefore entitled to the injunctive relief that they seek.

This Court specifically retained jurisdiction over the litigation giving rise to the Consent Order to enforce its provisions. (Consent Order, ¶ 33.) The Court should now temporarily restrain and preliminarily enjoin the Defendants, and all corporations and entities owned or controlled by them, and all agents, attorneys, employees, officers, directors, successors, assigns, and all others in concert or participation with them, jointly and severally, from producing, distributing and/or displaying the Motion Picture or any motion picture that exploits in whole or in part the history of Lynyrd Skynyrd or makes use of the name "Lynyrd Skynyrd" or the name, likeness, portrait, picture, performances or biographical material of Ronald Van Zant or of Steven Gaines in any manner or medium, including, without limitation, in theatrical feature or television motion pictures or streaming services.

## FACTUAL BACKGROUND

A full recitation of the relevant facts is set forth in the accompanying Declaration of Judith Van Zant Jenness and Gary R. Rossington in Support of Motion for Temporary Restraining Order and Preliminary Injunction, dated May 4, 2017, and the exhibits annexed thereto (the "Declaration").

Briefly, following the 1977 plane crash that killed co-founder and lead singer Ronnie Van Zant and other members of the iconic 1970's band Lynyrd Skynyrd (and others), certain surviving members of the band and widows of the deceased members entered into what this Court, in a 1988 decision, found to be a "blood oath" and thereafter a written agreement to

3

"never to use the name Lynyrd Skynyrd again in an effort not to capitalize on the tragedy that had befallen the group," which oath was observed by all concerned for ten years. See Grondin v. Rossington, 690 F. Supp. 200, 202 (S.D.N.Y. 1988), annexed as Ex. B to the Declaration; *see also id.* at 204-207 (holding that the "blood oath" was a valid and enforceable agreement). In 1988, disputes arose between certain of the Plaintiffs and a band consisting of surviving members of Lynyrd Skynyrd with others (including Pyle), culminating in litigation that was resolved through the Consent Order. The Consent Order is clear and unambiguous. Pyle and those acting in concert and participation with him, including Cleopatra, are violating and continuing to violate the Consent Order by producing a film Pyle co-wrote that purports to tell all or part of the Lynyrd Skynyrd story – exactly what is prohibited under the Consent Order.

Not only is Pyle's participation in the Motion Picture expressly prohibited by the Consent Order, but its production and distribution will irreparably harm Plaintiffs because, consistent with Plaintiffs' express rights under the Consent Order, they are in the process of producing the authorized story of Lynyrd Skynyrd. The Defendants' Motion Picture can only confuse the public, dilute the market for films about Lynyrd Skynyrd's history made consistent with the terms of the Consent Order, such as the Plaintiffs' film, defeat the Plaintiffs' rights under the Consent Order, and harm the Lynyrd Skynyrd name, brand, and reputation.

## ARGUMENT

### PLAINTIFFS ARE ENTITLED TO ENFORCEMENT OF THE EXISTING INJUNCTIONS SET FORTH IN THE CONSENT ORDER

A preliminary injunction is an appropriate remedy when a Court is being asked to enforce an order it has already entered. After all, "a consent decree is no more than a settlement that contains an injunction." Hurley v. Coughlin III, 158 F.R.D. 22, 29 (S.D.N.Y. 1993) citing In re Masters Mates & Pilots Pension Plan, 957 F.2d 1020, 1025 (2d Cir. 1992). The clear language

4

of the Consent Order makes clear that the Consent Order enjoins the type of conduct which Pyle, in concert and participation with Cleopatra, is now engaging in (or about to engage in). The Consent Order:

- permanently restrains and enjoins Pyle and "all corporations owned or controlled by [him] and all agents, attorneys, employees, officers, directors, successors, assigns, *and all others in concert or participation with them*" from, *inter alia*:

    o "[u]sing or purporting to authorize use of the name 'Lynyrd Skynyrd' or any logos, trade or service marks associated with the name 'Lynyrd Skynyrd', in the entertainment industry or otherwise, except as specifically authorized [t]herein," and

    o "[u]sing the name, likeness, portrait, picture, performances or biographical material of Ronnie Van Zant ('Van Zant') or Steven Gaines ('Gaines') for any purpose whatsoever, except as specifically authorized [t]herein...."

  (Consent Order, Ex. A to the Declaration, ¶ 1(ii)-(iii) (emphasis added);

- provides that "no [] exploitation of life story rights [as permitted therein] is authorized which purports to be a history of the 'Lynyrd Skynyrd' band, as opposed to the life story of the applicable individual" (Id., ¶ 3);

- provides that "[t]here shall be no exploitation in whole or in part of the history of the Lynyrd Skynyrd band without the prior written approval of Rossington, Collins and Ronnie's Estate," which approval was not obtained here (Id., ¶ 4);

- prohibits Pyle from making "any use of the name, likeness, portrait, picture, or biographical material of Van Zant or of Gaines" except pursuant to certain conditions enumerated in the Consent Order, none of which applies here (Id., ¶ 5);

- provides that "[n]o party shall have the right to utilize the name 'Lynyrd Skynyrd' except as specifically permitted [t]herein, and any unauthorized use, by any party, shall be deemed to be a breach of this Order" (Id., ¶ 24);

- requires Pyle to "notify and advise all of [his] present and future managers, booking agents, attorneys, promoters, publicists, related record and merchandising companies, all distributors, and all other agents and representatives of the terms [t]hereof, insofar as such define the authorized and permitted uses of the words 'Lynyrd Skynyrd'" (Id., ¶ 26);

- requires Pyle, upon learning of any failure by a third party to comply with the terms of the Consent Order, to immediately notify (a) the plaintiffs in the 1988 Action, including certain Plaintiffs herein, of such failure, and (b) such third party

5

of the applicable terms of the Consent Order and demand compliance with all such terms (Id.); and

- provides that "[i]n no event shall [Pyle] implicitly or through inaction authorize the violation of the terms [t]hereof by any third party." (Id.)

Moreover, Paragraph 33 of the Consent Order reserved this Court's jurisdiction to enforce the Consent Order. (Id. ¶ 33.) This Court unquestionably has the authority to enforce the terms of its own previously issued orders. PRL USA Holdings, Inc. v. United States Polo Ass'n, Inc., No. 14–CV–764 RJS, 2015 WL 1442487, at *6 (S.D.N.Y. Mar. 27, 2015).

In addition to the fact that the Consent Order is an existing injunction which the Court has unquestionable authority to enforce, the Plaintiffs would prevail and be entitled to injunctive relief even if the Consent Order were an ordinary contract not carrying the authority of an existing court order, because they also meet the standards for a new injunction. The requirements for a preliminary injunction are well known. A party must demonstrate: (a) a likelihood of success on the merits; (b) likelihood of suffering irreparable injury in the absence of an injunction; (c) that the remedies available at law, such as money damages, are inadequate to compensate for that injury; (d) the balance of hardships tips in its favor; and (e) the public interest is not disserved by the injunction. Salinger v. Colting, 607 F.3d 68, 80 (2d Cir. 2010). "It is well established that in this Circuit the standard for entry of a TRO is the same as for a preliminary injunction." Kelly v. Evolution Markets, Inc., 626 F. Supp. 2d 364, 374 (S.D.N.Y. 2009), citing Andino v. Fischer, 555 F. Supp. 2d 418, 219 (S.D.N.Y. 2008). The Plaintiffs meet each of these requirements.

### A. The Plaintiffs Are Likely To Succeed On The Merits

The Plaintiffs are likely to succeed on the merits. Consent decrees such as the Consent Order are both contracts and orders, construed as contracts (within the four corners thereof), but

enforced as orders. Berger v. Heckler, 771 F.2d 1556, 1567-68 (2d Cir. 1985). The Defendants have violated, and absent action of this Court are likely to continue to violate, several pertinent provisions of the Consent Order.

First, as noted above, Paragraph 1(ii) and (iii) of the Consent Order enjoins Pyle "and all others in concert or participation with" him – *e.g.*, Cleopatra – from, *inter alia*, using the name "Lynyrd Skynyrd" in the entertainment industry or otherwise and from using the name, likeness, portrait, picture, performances or biographical material of Ronald Van Zant or of Steven Gaines for any purpose whatsoever unless otherwise authorized. (Consent Order, ¶ 1.)

Second, Paragraph 3 of the Consent Order provides that while Pyle is authorized to tell his own life story in a film, he may not do so if it "purports to be a history of the 'Lynyrd Skynyrd' band, as opposed to the life story of" Pyle. (Consent Order, ¶ 3.) Yet, that is exactly what Pyle has told the media the Motion Picture is to be, stating that the Motion Picture is a "story about the music and the band and a rise and fall that happened so suddenly." (Declaration, Ex. H.)

Third, Paragraph 4 also precludes Pyle from making the film he has described. That paragraph provides that any exploitation "in whole or in part of the history of the Lynyrd Skynyrd band" may only proceed with the permission of the band's founding members (or their legal representatives) – *i.e.*, the Plaintiffs – which permission Pyle and the other Defendants lack. (Consent Order, ¶ 4.) Worse still, Pyle has flaunted his lack of authority to make the movie he plans, gloating to the press that he appreciates his co-defendants, Cleopatra, "stepping up" to "go against the powers that be." (Declaration, Ex. H.) Presumably, the "powers that be" include this Court, since it is this Court's order that prohibits what he and Cleopatra are doing. Given the

7

foregoing, the Plaintiffs' likelihood of succeeding on the merits is clear, and that prong of the preliminary injunction standard is satisfied.

### B. The Plaintiffs Will Suffer Irreparable Injury Absent An Injunction and Other Remedies are Inadequate

The Plaintiffs also satisfy the irreparable harm prong even if they were required to satisfy the preliminary injunction standard anew. As set forth in the Declaration, the Plaintiffs have been actively engaged in the development of an *authorized* film about the history of Lynyrd Skynyrd, approved by those parties whose consent is required under the Consent Order. There is a limited and uncertain market for motion pictures about the band, and the Defendants' production will dilute the market, causing irreparable injury to the Plaintiffs' right to produce and distribute their prospective motion picture. Moreover, there is a substantial risk that consumers will be confused as to the source of the Motion Picture, particularly since Plaintiffs intend to release their own, authorized film. There is also a substantial risk of reputational harm to the Plaintiffs as a result of (a) any objectionable content concerning Lynyrd Skynyrd, Ronnie Van Zant, or Steven Gaines contained in an unauthorized version of the so-called "True Story of the Lynyrd Skynyrd Plane Crash," and (b) the potential spillover effect of Pyle's sordid personal history. See Rex Med. L.P. v. Angiotech Pharm. (US), Inc., 754 F. Supp. 2d 616, 621-23 (S.D.N.Y. 2010) (reputational harm from a breach of an agreement may constitute irreparable harm). The threatened irreparable injury is actual and imminent: according to published reports, the Motion Picture is about to be or is currently in the filming stage, with the main cast set and retained (including actors to portray Ronnie Van Zant and Plaintiff Rossington).

The Plaintiffs' remedies at law for such injury are inherently inadequate due to the impossible nature of the expert economic analysis that would be required to determine the extent of any resulting monetary damages. Moreover, there is no way at all to measure the reputational

8

harm that may be suffered by the Plaintiffs. Indeed, as this Court has previously held in the 1988 litigation involving some of the same parties (including Pyle):

> In this case, Grondin [the prior surname of Ronnie Van Zant's widow, who is the president of the corporate Plaintiff in this action] has established irreparable injury and will probably succeed on the merits. She thus may win permanent injunctive relief. ...
>
> Indeed, if in this case confusion or a valid contract can be shown, irreparable injury follows. The number of consumers who would attend a concert of 87-88 Lynyrd Skynyrd and thereafter would be less inclined to purchase previously released Lynyrd Skynyrd albums is incalculable. Also incalculable is the number of consumers who would purchase the Live album under the impression they were purchasing previously released material or who would be less inclined to purchase old Lynyrd Skynyrd materials based on their impressions of the Live album. Additionally, to the extent Grondin entered into a contract motivated by the desire to preserve her husband's memory, her emotional damages are difficult to quantify. A review of the merits clarifies the issues of injury.

690 F. Supp. at 204. Due to the substantial and clear but unquantifiable nature of the damages that Plaintiffs would incur, the harm should be prevented before it accrues, rather than attempting the impossible task of trying to quantify it after the fact. See Payroll Express Corp. v. Aetna Cas. & Surety Co., 659 F.2d 285, 292 (2d Cir. 1981) (legal remedies may be found inadequate where any calculation of damages would be speculative).

### C. The Balance of the Equities Tips Decidedly in Favor of the Plaintiffs

The balancing of hardships and equities tips decidedly in favor of issuing an injunction and enforcing the terms of the Consent Order. Pyle may not be happy with the restrictions he agreed to, but the Plaintiffs are entitled to have the Consent Order enforced as written and entered. See, e.g., Berger at 1579 ("plaintiffs who had bargained for the terms of the decree, and agreed to cease litigating on the basis of the decree were entitled to have the decree enforced as

9

written."). The Consent Order's terms are precisely what the parties bargained for to end the underlying litigation.

Any claim by the Defendants that they will face economic or other hardship as a result of any amounts they may have expended in connection with their improper activities rings hollow. Pyle himself has been on notice for nearly 30 years of the restrictions he faced in making a film about the history of Lynyrd Skynyrd. Moreover, he was obligated to inform any third parties that were not parties to the Consent Order about such restrictions prior to starting work on any project that might violate the terms of the Consent Order and demand prompt compliance therewith. (Consent Order, ¶ 26.) In addition, Cleopatra was put on actual notice of Pyle's inability to create a film such as the Motion Picture by virtue of the cease and desist letter they received from Plaintiffs' counsel on July 15, 2016. (Declaration, ¶¶ 27-28 and Ex. D.) Defendants knowingly accepted the risk of having whatever investment they may have thus far made be for naught if the Plaintiffs exercised their rights under the Consent Order to terminate the Motion Picture.

### D. The Public Interest Is Served By the Issuance of an Injunction

The Plaintiffs meet the final prong of the preliminary injunction standard as well. First, the injunction, in the form of the Consent Order, has already been issued. Second, the public has an interest in the enforcement of orders of this Court. If orders of this Court are not enforced, public confidence in the institution will be severely eroded. Finally, the public is served by the issuance of an injunction because it will eliminate possible consumer confusion over which of two competing films is authorized and the Defendants cannot claim that the public will be injured in any manner if their film is not produced and released.

### E. Not Only Pyle, But Also Cleopatra, Should Be Enjoined

Although not a signatory to the Consent Order, Cleopatra is subject to it and to the jurisdiction of this Court for several reasons. First, Paragraph 1 of the Consent Order applies the injunction to both the signatories and "all others in concert or in participation with them." That broad language unmistakably includes Cleopatra – by all accounts, Cleopatra is working with Pyle to produce, if not spearheading the production of, the Motion Picture. (*See* Declaration, Exs. G and H.)

Second, as noted above, Paragraph 26 of the Consent Order required Pyle to provide parties he was working with, such as Cleopatra, notice of the existence of the Consent Order, and specifically of the restrictions on the use of the words "Lynyrd Skynyrd." Moreover, Plaintiffs gave Cleopatra actual notice in July 2016. All of the Defendants were aware of the restrictions in the Consent Order, and nevertheless chose to proceed with the Motion Picture, knowing full the consequences and potential ramifications of doing so.

Third, given the inevitable distribution of the Motion Picture in New York, and the Court's inherent authority to enforce its own orders, including the Consent Order, this Court has jurisdiction over Cleopatra. See In re Methyl Tertiary Butyl Ether Products Liability Litig., 399 F. Supp. 2d 325, 332-33, 338 (S.D.N.Y. 2005) (given defendants' participation in the national market and nationwide distribution of their products, defendants expected, or reasonably should have expected, their products to reach all of the states in the nation, thereby purposefully availing themselves of the privilege of doing business in the forum states, and further, expected or should have reasonably expected their products to reach and have consequences in New York); see also Starmedia Network, Inc. v. Star Media Inc., 2001 WL 417118, *2-3 (S.D.N.Y. Apr. 23, 2001) (allegations of threatened harm in the New York market resulting from the potential for

11

confusion or deception of New York residents and defendant's efforts to attract and service business across the nation, including New York, satisfy the requirement of an injury "within the state" for purposes of New York's long arm statute).

## CONCLUSION

For the reasons set forth herein and in the Declaration, this Court should issue an order temporarily restraining and preliminarily enjoining the Defendants, and all others in concert or participation with them, from producing, distributing and/or displaying the Motion Picture or any motion picture that exploits in whole or in part the history of Lynyrd Skynyrd or makes use of the name "Lynyrd Skynyrd" or the name, likeness, portrait, picture, performances or biographical material of Ronald Van Zant or of Steven Gaines in any manner or medium, including, without limitation, in theatrical feature or television motion pictures or streaming services.

Dated: May 5, 2017

OTTERBOURG P.C.

By: _____
Richard G. Haddad
Sandor Frankel
Pauline McTernan
230 Park Avenue
New York, New York 10169
Tel.: (212) 661-9100
Fax: (212) 682-6104
rhaddad@otterbourg.com
sfrankel@otterbourg.com
pmcternan@otterbourg.com

*Attorneys for Plaintiffs*