UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RONNIE VAN ZANT, INC., GARY R. ROSSINGTON, JOHNNY VAN ZANT, BARBARA HOUSTON, as the Trustee of the ALLEN COLLINS TRUST, and ALICIA RAPP and CORINNA GAINES BIEMILLER, as the Personal Representatives of the Estate of STEVEN GAINES,

Plaintiffs,

- against -

ARTIMUS PYLE (a/k/a THOMAS D. PYLE), CLEOPATRA RECORDS, INC., CLEOPATRA FILMS, a division of CLEOPATRA RECORDS, INC., JOHN DOE, JANE DOE, XYZ CORPORATION, and XYZ LLC (the names of the last four defendants being fictitious and unknown to plaintiffs, and intended to designate persons or entities that have or may have a role in the production and distribution of the Motion Picture complained of in the Complaint herein),

Defendants.

17 Civ. 3360 (RWS)

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

OTTERBOURG P.C.
230 Park Avenue
New York, New York 10169
Telephone: (212) 661-9100
Facsimile: (212) 682-6104

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 2

POINT I — THE CONSENT ORDER PRECLUDES PYLE AND THOSE WORKING IN CONCERT OR PARTICIPATION WITH HIM FROM PRODUCING THE MOTION PICTURE ........ 2

A. Cleopatra May Not Participate in a Violation of the Consent Order ........ 3

B. Cleopatra's Litigation Description of the Motion Picture and of Pyle's Role Is Belied by Pyle and Cleopatra's Public Descriptions of the Motion Picture ........ 4

POINT II — THE MOTION DOES NOT SEEK TO IMPINGE ON CLEOPATRA'S RIGHTS TO PRODUCE A FILM ABOUT LYNYRD SKYNYRD AND/OR THE PLANE CRASH ........ 6

A. Plaintiffs Are Not Seeking To Abridge Cleopatra's First Amendment Rights ........ 7

B. The Plaintiffs Are Not Seeking an Unenforceable Prior Restraint ........ 7

C. Plaintiffs Will Suffer Irreparable Harm If an Injunction Is Not Issued ........ 8

POINT III — IN THE ALTERNATIVE, EXPEDITED DISCOVERY IS WARRANTED ........ 9

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

Page

Assoc. for Retarded Citizens of Connecticut, Inc. v. Thorne, 30 F.3d 367 (2d Cir. 1994) ............4

CBS, Inc. v. Davis, 510 U.S. 1315 (1994)........................................................................7

Crosby v. Bradstreet & Co., 312 F.2d 483 (2d Cir. 1963)...................................................8

Madison Square Garden Boxing, Inc. v. Shavers, 562 F.2d 141 (2d Cir. 1977) ............................4

N.Y. Times Co. v. United States, 403 U.S. 713 (1971)..................................................7, 8

Plaintiffs respectfully submit this Reply Memorandum of Law in further support of their Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion").[1]

## PRELIMINARY STATEMENT

This case presents a tale of two movies. The first is the movie that the Defendants have repeatedly described in public statements prior to the commencement of this action; the second movie, described for the first time by Cleopatra in opposition to the Plaintiffs' Motion, is radically different.[2] The first movie is clearly barred by the Consent Order – as tacitly acknowledged by Cleopatra's opposing papers not addressing it at all. The second movie is an afterthought, designed to defend against this action. The contrasts are stark:

- The movie as publicly promoted by Pyle is "[a] story about the music and the band and a rise and fall that happened so suddenly" told by Pyle "from behind the camera," which Cleopatra is "stepping up" to produce "when nobody else was willing to go against the powers that be, to get this story told."

*versus*

- The movie as described by Cleopatra in this action: "a film about the three or four-day period surrounding the Lynyrd Skynyrd plane crash in 1977"

Cleopatra and Pyle should be preliminarily enjoined from producing and distributing the first movie because it violates the Consent Order.[3] Alternatively, the Court should order expedited discovery to allow for an evidentiary hearing in twenty days.

---

[1] Capitalized terms that are used but not defined herein have the meanings ascribed to them in Plaintiffs' Memorandum of Law in Support of Motion for Temporary Restraining Order and Preliminary Injunction ("Pls.' Mem. of Law").

[2] Pyle has not filed an opposition to the Motion.

[3] In the event this Court elects to require that Plaintiffs post a bond in connection with the issuance of the requested injunction, such bond should be in an amount far less than that requested by Cleopatra because the harm that Cleopatra will suffer if production of the Motion Picture is enjoined for a limited amount of time does not encompass the entirety of the claimed $1.3 million production budget. The purpose of an injunction bond is not to compensate Cleopatra for the entire cost of the film, but only the limited damages they may accrue if the injunction was granted incorrectly.

## ARGUMENT

## POINT I

## THE CONSENT ORDER PRECLUDES PYLE AND THOSE WORKING IN CONCERT OR PARTICIPATION WITH HIM FROM PRODUCING THE MOTION PICTURE

Cleopatra misstates the nature of this case. As made clear in the Motion, Cleopatra is free to make a movie about Lynyrd Skynyrd and/or about the plane crash. What Cleopatra is not free to do, however, is to make such a movie in concert and participation with Pyle in violation of the restrictions imposed on him by the Consent Order.

Pyle has no First Amendment right to violate the Consent Order, alone or in concert or participation with anyone, and Cleopatra has no First Amendment or other right to participate in Pyle's violation of the Consent Order. That, however, is precisely what Defendants are doing. Pyle, with Cleopatra, is knowingly violating the Consent Order by producing a Motion Picture entitled "Street Survivors: The True Story of the Lynyrd Skynyrd Plane Crash" – a movie which is named after Lynyrd Skynyrd's last album released mere days before the plane crash, is based upon a screenplay reported to be co-written by Pyle and Cohn, and is being publicly promoted by its key publicist, Pyle, as being a "story about the music and the band and a rise and fall that happened so suddenly." *See* Pls.' Mem. of Law, at 5-8.

Such a movie contravenes the express terms of the injunction set forth in the Consent Order, which permanently restrains and enjoins Pyle, and "*all others in concert and participation with*" him (such as Cleopatra), from, *inter alia*:

- "[u]sing or purporting to authorize use of the name 'Lynyrd Skynyrd' or any logos, trade or service marks associated with the name 'Lynyrd Skynyrd', in the entertainment industry or otherwise, except as specifically authorized [t]herein," and

- "[u]sing the name, likeness, portrait, picture, performances or biographical material of Ronnie Van Zant ('Van Zant') or Steven Gaines ('Gaines') for any purpose whatsoever, except as specifically authorized [t]herein...."

(Consent Order, Ex. A to the Declaration, ¶ 1(ii)-(iii) (emphasis added). Defendants' collaboration on the Motion Picture also violates the Consent Order's prohibitions on any:

- "exploitation of life story rights...which purports to be a history of the 'Lynyrd Skynyrd' band, as opposed to the life story of the applicable individual" (Id., ¶ 3);
- "exploitation in whole or in part of the history of the Lynyrd Skynyrd band without the prior written approval of Rossington, Collins and Ronnie's Estate" (Id., ¶ 4) (which approval was not obtained here);
- "use of the name, likeness, portrait, picture, or biographical material of Van Zant or of Gaines" except pursuant to certain conditions enumerated in the Consent Order (Id., ¶ 5) (none of which applies here); and
- "right to utilize the name 'Lynyrd Skynyrd' except as specifically permitted [t]herein" (Id., ¶ 24).

Cleopatra does not dispute the limitations imposed by the Consent Order. Rather, Cleopatra argues that it is not bound by the Consent Order and that, even if bound by it, it took actions after July of 2016 that ameliorated any violation of it. Cleopatra's arguments are without merit.

### A. Cleopatra May Not Participate in a Violation of the Consent Order

The Consent Order clearly applies to Pyle and those acting "in concert or participation with" him. (Declaration, Ex. A, ¶ 1.) In July 2016, Plaintiffs put Cleopatra on notice that Pyle was not authorized to collaborate with Cleopatra on a motion picture that violated the terms of the Consent Order. (Id., Ex. D.) Nevertheless, in knowing defiance of the Consent Order's express terms, Cleopatra continued to work with Pyle on the film, even further exploiting the band's name and history by giving the Motion Picture the name of the last album the band released just days before the crash and having it purport to be "The True Story of the Lynyrd Skynyrd Plane Crash." Having worked with Pyle to violate the Consent Order – even causing

Pyle to applaud Cleopatra for "stepping up" to "go against the powers that be" to do so (Id., Ex. H) – Cleopatra is subject to the injunction contained in the Consent Order by its express terms.

The cases cited by Cleopatra in an effort to support its broad claim that consent orders are merely contracts that only bind the signatories are inapposite. For example, in Madison Square Garden Boxing, Inc. v. Shavers, 562 F.2d 141 (2d Cir. 1977) (cited at Cleopatra Records' Memorandum of Law in Opposition to Plaintiffs' Motion for Preliminary Injunction ("Opp.") p. 8), the court determined that the consented-to injunction did not apply to a non-signatory because upon entry of the final judgment in the underlying case, the injunction in question came to an end and no longer applied to any party, even the signatories. To the contrary, the injunction contained in the Consent Order has no similar expiration – by its terms, its provisions are enforceable even after the death of band member signatories and beneficiaries. In Assoc. for Retarded Citizens of Connecticut, Inc. v. Thorne, 30 F.3d 367 (2d Cir. 1994), the court held that consent decrees could bind non-parties who were adequately represented by parties to the decree. Here, Pyle agreed to certain restrictions on behalf of those with whom he might in the future act in concert or participation in the making of a film about the history of Lynyrd Skynyrd. In light of the Defendants' collaboration, this necessarily included, and thus bound, Cleopatra.

**B. Cleopatra's Litigation Description of the Motion Picture and of Pyle's Role Is Belied by Pyle and Cleopatra's Public Descriptions of the Motion Picture**

Cleopatra also argues that it is not in violation of the Consent Order because, following its receipt of the Cease and Desist letter from Plaintiffs in July 2016, Cleopatra scrapped its plans for Pyle to assist with the writing of the script and, instead, had Cohn write the script based on interviews with Pyle and other independent research. (Perera Decl., ¶¶ 8-10; Cohn Decl., ¶¶ 5-12.) However, Cleopatra's attempts to distance itself from Pyle and downplay the Motion

Picture as solely being a "film about the three or four-day period surrounding the Lynyrd Skynyrd plane crash in 1977" is nothing more than a litigation stratagem that is at odds with Defendants' public pronouncements. Similarly, Cleopatra's contention is not supported by any documents offered to the Court, even though Cleopatra would necessarily have documents such as its contract with Pyle, readily available for submission.

In stark contrast to Cleopatra's current litigation claims, recent publicly available information and press reports resulting from the Defendants' own promotional efforts make clear that Pyle had a significant role in the writing of the screenplay for the Motion Picture, that Pyle is its primary promoter, and that Pyle, with Cleopatra's participation, is using the name and history of Lynyrd Skynyrd and the name, likeness, portrait, picture, performances and biographical material of the band's deceased founding members, Ronnie Van Zant and Steven Gaines, without authorization, in violation of the Consent Order. Recent public information and reports reflect that:

- Pyle is credited as having co-written the Motion Picture with Cohn (see IMDb page for the Motion Picture, *available at* http://www.imdb.com/title/tt6744988/);
- the Motion Picture "centers on drummer Artimus Pyle's recollection of the events surrounding the crash of the group's touring plane in Mississippi on Oct. 20, 1977" (Declaration, Ex. G);
- actors have been cast to play the roles of Ronnie Van Zant and Steven Gaines (Id., Exs. G and H);
- the Motion Picture "finds Lynyrd Skynyrd drummer Artimus Pyle telling the story of the Oct. 20, 1977, tragedy from behind the camera" (Id., Ex. H);
- Pyle is promoting the Motion Picture as "a good movie that tells a very passionate, intimate story about the music and the band and a rise and fall that happened so suddenly" (Id.);
- the Motion Picture is "named for the album that Lynyrd Skynyrd released just three days before the deadly plane crash – [and] will focus primarily on Pyle's recollection of the tragedy…." (Id.);

- "[t]he drummer [Pyle] painstakingly recounted the terrible accident with director Jared Cohn in order to get the story right" (Id.);
- Pyle "wants the movie to portray my band members the way they were" (Id.);
- Pyle is promoting the Motion Picture as "a much-deserved movie for the fans of Skynyrd, and for people who'll become fans after they see it" (Id.);
- Pyle has applauded Cleopatra's willingness to collaborate with him on the Motion Picture stating: "I'm grateful that Cleopatra [Films] is stepping up the way it has, when nobody else was willing to go against the powers that be, to get this story told." (Id.)

This publicly available information – which includes statements made directly by Pyle and other information disseminated by Defendants to promote their commercial endeavor – contradicts the Defendants' current claims, manufactured for the purposes of this litigation, that the movie does not run, and that they took steps to avoid running, afoul of the Consent Order.

Indeed, in July 2016, in response to the Plaintiffs' Cease and Desist letter, Cleopatra's counsel invoked Cleopatra's First Amendment rights and did not argue, as Cleopatra does now, that the film is only about the three or four days surrounding the plane crash. (Id., Ex. E)

Moreover, despite Cleopatra's current claim that it merely interviewed Pyle for the Motion Picture as a "witness" to the crash, in July 2016, Cleopatra's counsel advised Plaintiffs in writing that Mr. Pyle's business address was "c/o Cleopatra Records, Inc." (Id., ¶ 29). It is hard to believe that an individual who is merely being interviewed by a company (Cleopatra) would list that company as his business address.

## POINT II

## THE MOTION DOES NOT SEEK TO IMPINGE ON CLEOPATRA'S RIGHTS TO PRODUCE A FILM ABOUT LYNYRD SKYNYRD AND/OR THE PLANE CRASH

Recognizing that the Motion Picture contravenes the plain terms of the Consent Order, Cleopatra's opposition sets up a "strawman" to knock down, casting this case as one of

abridgment of free speech rights. However, that claim is mere artifice. Cleopatra may make a film about Lynyrd Skynyrd, but may not do so in concert or participation with Pyle's violation of the Consent Order, or in contravention of any other applicable legal restriction.

### A. Plaintiffs Are Not Seeking To Abridge Cleopatra's First Amendment Rights

The Plaintiffs do not dispute Cleopatra's First Amendment right to make a film about Lynyrd Skynyrd and/or the plane crash. What Cleopatra may not do is to base its film on a paid collaboration with Pyle, a signatory to the Consent Order or participate in Pyle's multiple violations of the Consent Order. Such a "paid for" interview with Pyle, where the sole aim is the commercial production of a for-profit film, stands in stark contrast to the interviews cited by the Defendants (such as those with news outlets and talk show hosts) during which Pyle, as was his right under the Consent Order, merely responded to questions about his life and experiences.

### B. The Plaintiffs Are Not Seeking an Unenforceable Prior Restraint

Granting the injunctive relief requested by the Motion would not constitute a prior restraint of speech in the manner suggested by Cleopatra. In its opposition, Cleopatra casts itself as an investigative journalistic organization, and boldly equates the story it wishes to tell to profound matters of public importance such as the Pentagon Papers and public health. See Opposition pp. 13-14 citing N.Y. Times Co. v. United States, 403 U.S. 713 (1971) and CBS, Inc. v. Davis, 510 U.S. 1315 (1994). Those cases are not only distinguishable due to the extreme public interest in the dissemination of the published content (i.e., matters of military conduct and food safety versus the cultural nature of the Lynyrd Skynyrd story), but because the primary motivation of the New York Times and CBS in those cases was journalistic, as opposed to Cleopatra's motivation, which is commercial and monetary (seeking by their own admission primarily to capitalize on the impending 40th anniversary of the plane crash).

Cleopatra also claims that courts reject prior restraint of speech contained in injunctions premised on an economic harm. However, Cleopatra's own quotation of Justice Stewart in the N.Y. Times case actually militates in favor of the issuance of the injunction requested by the Plaintiffs. Opp. p. 14 quoting N.Y. Times Co., 403 U.S. at 730 ("to support prior restraint, movant must show that publication would 'surely result in direct, immediate, and irreparable damage' to his rights"). Yet, the Plaintiffs will suffer just such irreparable damage to their unambiguous and bargained for rights under the Consent Order if Cleopatra and Pyle are allowed to flout its terms by making their own film about the history of the band.

Cleopatra's reliance on Crosby v. Bradstreet & Co., 312 F.2d 483 (2d Cir. 1963) is similarly misplaced. There, the order at issue was extremely broad, and covered any manner of report about the named persons. Here, the restrictions in the Consent Order are narrowly tailored to serve specific personal, commercial, and reputational interests. And, Pyle was expressly granted certain affirmative rights as well (including the right to tell his own story within the agreed to limitations of the Consent Order). He benefitted commercially from the Consent Order and later settlements for decades, and now, through Cleopatra, seeks to ignore those discrete restrictions so that he may realize additional monetary gain.

**C. Plaintiffs Will Suffer Irreparable Harm If an Injunction Is Not Issued**

Cleopatra is too quick to dismiss as speculative the actual and irreparable harm which the Plaintiffs will suffer if an injunction is not issued. The very fact that the film as promoted by Pyle violates the express terms of the Consent Order is the type of irreparable harm which injunctions are intended to prevent. Ignoring this inconvenient truth, Cleopatra argues that because it is further down the production path than the Plaintiffs, and because the Plaintiffs have

not previously chosen to exercise their rights under the Consent Order to make a biopic about Lynyrd Skynyrd, then Defendants' own conduct is excused. That is simply not the case.

*First*, the Consent Order does not provide, as Cleopatra implies, that the Plaintiffs had to exercise their rights to make a film by a date certain or that right would be transferred to Pyle. Therefore, it is irrelevant at what stage the Plaintiffs are or are not at in the production of their own film. Nor is it relevant that previous films about the band have been made without objection, because those were not produced in concert or participation with Pyle or any other similarly restricted signatory to the Consent Order. What matters is that the Consent Order gives the Plaintiffs, and not Pyle or those working in concert with him, the right to make such a film.

*Second*, Cleopatra's proposed use of "cards" containing disclaimers at the beginning and end of the Motion Picture is an acknowledgment of the very real danger of customer confusion which is given such short shrift in the Opposition. Moreover, "cards" are not a carve out to the limitations of the Consent Order. Not incidentally, such a "solution" – only seen by consumers that have already paid to view the Motion Picture – is woefully inadequate and would hardly serve to counter the public perception caused by Pyle's promotion of the Motion Picture that it is "official." Therefore, the danger of customer confusion is very real, and warrants an injunction.

**POINT III**

**IN THE ALTERNATIVE, EXPEDITED DISCOVERY IS WARRANTED**

Although making broad pronouncements as to the current status of their film and how it evolved to its current incarnation, Cleopatra offers no documentary evidence to support its claim. Therefore, in the event the Court is inclined to defer issuance of the requested injunction so that it may hold a later evidentiary hearing, the Plaintiffs respectfully request leave to obtain discovery on the Motion in advance of an evidentiary hearing within 20 days. Appropriate

discovery from the Defendants would include but not be limited to: contracts and payments between Cleopatra and Pyle, recordings and transcripts of interviews Cleopatra conducted of Pyle, the script for the Motion Picture, public statements and press releases issued by the Defendants about the Motion Picture, other interviews conducted by Cleopatra for the Motion Picture, and all communications between Pyle and Cleopatra regarding the Motion Picture and/or Lynyrd Skynyrd. As noted previously, such documents would be readily available for production by Cleopatra which evokes the question of why such documents were not provided to this Court as part of Defendants' Opp.

## CONCLUSION

For the reasons set forth herein and in the Plaintiffs' moving papers, this Court should grant the relief requested by the Plaintiffs in the Motion, or alternatively, should grant the expedited discovery and evidentiary hearing requested herein.

Dated: May 12, 2017

OTTERBOURG P.C.

By:______________________

Richard G. Haddad
Sandor Frankel
Erik B. Weinick
Pauline McTernan
230 Park Avenue
New York, New York 10169
Tel.: (212) 661-9100
Fax: (212) 682-6104
rhaddad@otterbourg.com
sfrankel@otterbourg.com
eweinick@otterbourg.com
pmcternan@otterbourg.com

*Attorneys for Plaintiffs*

4771296

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| RONNIE VAN ZANT, INC., GARY R. ROSSINGTON, JOHNNY VAN ZANT, BARBARA HOUSTON, as the Trustee of the ALLEN COLLINS TRUST, and ALICIA RAPP and CORINNA GAINES BIEMILLER, as the Personal Representatives of the Estate of STEVEN GAINES, Plaintiffs, | : | 17 Civ. 3360 (RWS) |
| - against - | : | |
| ARTIMUS PYLE (a/k/a THOMAS D. PYLE), CLEOPATRA RECORDS, INC., CLEOPATRA FILMS, a division of CLEOPATRA RECORDS, INC., JOHN DOE, JANE DOE, XYZ CORPORATION, and XYZ LLC (the names of the last four defendants being fictitious and unknown to plaintiffs, and intended to designate persons or entities that have or may have a role in the production and distribution of the Motion Picture complained of in the Complaint herein), Defendants. | : | **AFFIRMATION OF SERVICE** |

I, Erik B. Weinick, affirm as follows:

1. I am an attorney admitted to practice in this Court. I am Of Counsel with the law firm Otterbourg P.C., the attorneys for plaintiffs in this action. I am over eighteen years of age, reside in New York County, New York, and am not a party to this action.

2. On May 12, 2017, I caused to be served a true and accurate copy of Plaintiffs' Reply Memorandum of Law in Further Support of Motion for Temporary Restraining Order and Preliminary Injunction (the "Reply") upon the defendants by causing same to be enclosed in securely sealed, pre-paid Federal Express boxes marked for overnight delivery, properly addressed to:

Artimus Pyle (a/k/a Thomas D. Pyle)
103 Kennedy Street
Black Mountain, North Carolina 28711

Artimus Pyle (a/k/a Thomas D. Pyle)
c/o Cleopatra Records, Inc.
1831 Pontius Avenue
Los Angeles, California 90025

Evan Mandel, Esq.
Mandel Bhandari LLP
80 Pine Street
33rd Floor
New York, New York 10005

3. In addition, on May 12, 2017, I also caused a true and accurate copy of the Reply to be served on defendants by emailing it to counsel for Cleopatra Records, Inc. and Cleopatra Films at the following email addresses: dc@mandelbhandari.com and em@mandelbhandari.com.

4. I affirm the foregoing to be true under penalty of perjury.

Dated: May 15, 2017
New York, New York

ERIK B. WEINICK